**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

William Hurlburt

   v.                                            Civil No. 05-cv-203-PB

Dana Hoyt et al.

**O R D E R**

Proceeding *pro se* and *in forma pauperis*, plaintiff William Hurlburt brings this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA"), alleging that defendants have abridged his right to freely exercise his religion (document no. 1). Seeking monetary and injunctive relief, he brings individual capacity claims against the following officers and employees of the Northern New Hampshire Correctional Facility ("NCF") and the New Hampshire Department of Corrections ("NHDOC"): Dana Hoyt, NCF Chaplin; Larry Blaisdell, NCF Warden; and John Vinson, Esquire, Counsel to the NHDOC Commissioner.

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted. See 28 U.S.C. § 1915A; U.S.

District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2). For the reasons stated below, I conclude that Hurlburt has stated Section 1983 and RLUIPA claims against Hoyt, Blaisdell and Vinson premised upon the denial of free exercise of religion and the substantial burden on religious practices.

## Standard of Review

In reviewing a *pro se* petition or complaint, this court must construe the pleadings liberally and in favor of that party. See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)). At this preliminary stage of review, all factual assertions made by a plaintiff and the inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). This review ensures that *pro se* pleadings are given fair and meaningful consideration. See Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988). I apply this standard in reviewing Hurlburt's complaint.

## Background

Hurlburt is an inmate at the NCF. He claims to be a

Christian who wishes to take the Nazarite Vow, a vow that requires him to abstain from shaving his face.  Defendants allegedly have denied him a religious shaving pass, thereby interfering with his free exercise of religion and observance of the Nazarite Vow.

    Hurlburt asserts that he has exhausted the administrative grievance procedures available to him at the NCF and, in doing so, has advised prison officials of his religious practices and needs.  Through a series of written inmate request slips and grievances submitted to Hoyt, Blaisdell and Vinson from November 2004 through March 2005, he requested a shaving pass and informed defendants of the restrictions placed on his religious practices.

    In a November 15, 2004 inmate request slip to Hoyt, he expressed his wish to take the Nazarite Vow, provided scripture references to the Christian Bible in support of his faith and requested a religious shaving pass.  Hoyt responded that waivers are issued only to followers of a recognized religious group whose common practice it is to allow facial hair to grow and instructed Hurlburt to identify his affiliation with such group. On November 20, 2004, Hurlburt provided Hoyt with scripture references in support of his faith and stated that his Nazarite

beliefs were sincere.  Hoyt responded that he consulted with Warden Blaisdell who stated that in order to demonstrate a sincerely held religious belief Hurlburt must establish his affiliation with a religion or religious group and the auspices under which he intends to take the vow.  Upon making this showing, Hurlburt would be granted a waiver in accordance with prison policy, which allows for a maximum length of a quarter-inch beard growth.

On December 15, 2004, Hurlburt filed an inmate request slip with Blaisdell informing him that: (1) his affiliation was Christian and he wished to take the Nazarite Vow; (2) he intended to take the vow with God; (3) his beliefs were supported by the scriptural references provided; (4) he made repeated requests to Hoyt for a religious shaving pass; and (5) Hoyt denied his requests.  Blaisdell responded by directing Hurlburt to establish a sincerely held religious belief.  In a second request filed with Blaisdell on January 10, 2005, Hurlburt repeated his grievances and provided case law in support of his request for a religious shaving pass.  In response, Blaisdell advised Hurlburt that he would not be granted a shaving pass until he demonstrated a sincerely held religious belief.

On January 31, 2005, Hurlburt filed a grievance with the Commissioner of the NHDOC in which he reiterated his request for a religious shaving pass and provided support of his sincerely held Christian religious beliefs and desire to take the Nazarite Vow.  He also provided an account of the requests he submitted to Hoyt and Blaisdell and their repeated denials of a shaving pass. Vinson, Counsel for the Commissioner, responded on March 3, 2005, advising Hurlburt to establish his affiliation with a religious group and the auspices under which he intended to take the vow. On March 8, 2005, Hurlburt filed a final grievance with Vinson, reiterating his request for a religious shaving pass and providing notice of his intention to file suit in federal court.

Over one year has elapsed since Hurlburt made his initial request, and to date his request has not been met.  He now brings this Section 1983 action, alleging that defendants' acts and omissions abridge his First Amendment right to free exercise of religion and violate provisions of the RLUIPA.

## Discussion

I. <u>Section 1983</u>

To state a claim under Section 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or

laws of the United States has been violated, and (2) that the violation was committed by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  The premise of Hurlburt's Section 1983 action is that defendants, acting under color of state law, have violated his rights under both the First Amendment's Free Exercise Clause,[1] as applied to the states through the Fourteenth Amendment, and the RLUIPA.

    A.   Free Exercise of Religion Claim

It is well-established that convicted prisoners do not forfeit all constitutional protections by reason of their incarceration.  See Bell v. Wolfish, 441 U.S. 520, 545 (1979). "In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his

---

[1] The relevant provision of the Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. Amend. I (hereinafter "Free Exercise Clause").

status as a prisoner or with the legitimate penological objectives of the corrections system," Pell v. Procunier, 417 U.S. 817, 822 (1974), including the right to free exercise of religion, see O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citing Cruz v. Beto, 405 U.S. 319, 322 (1972)); accord Moorish Science Temple, Inc. v. Smith, 693 F.2d 987, 990 (2d Cir. 1982) ("[A] prisoner retains those First Amendment guarantees, including the right to participate in practices which are an integral part of his religious faith . . ..").  Prisons must provide all inmates reasonable opportunities to exercise their religious freedom.  See Cruz, 405 U.S. at 322 n.2.

Free exercise claims brought by prisoners are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (quoting O'Lone, 482 U.S. at 349).  See also Shaw v. Murphy, 532 U.S. 223, 227-229 (2001).  The Supreme Court has held that a prisoner's sincerely held religious beliefs must yield if contrary to prison regulations that are "reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987); see also, Washington v. Harper, 494 U.S. 210, 224

(1990) (prison restrictions that implicate constitutional rights are judged by the reasonableness standard); O'Lone, 482 U.S. at 351-352 (the Constitution does not require the prison to sacrifice legitimate penological objectives to satisfy an inmate's desire to exercise his religion so long as an inmate is not deprived of all forms of religious exercise).

Hurlburt allegedly is a Christian who sincerely believes that the Nazarite Vow is an integral part of his faith. He wishes to take the vow and, in doing so, is required to abstain from shaving his face. Through a series of inmate request slips and correspondence submitted to Hoyt, Blaisdell and Vinson, he repeatedly informed defendants of the restrictions placed on his religious practice. Despite his repeated requests, defendants have denied him a religious shaving pass, thereby interfering with his free exercise of religion and observance of the Nazarite Vow. More than one year has elapsed since he first informed defendants of the alleged deprivations but to date he has not received an adequate response. If true, these allegations may well give rise to a viable claim under the First Amendment's Free Exercise Clause against Hoyt, Blaisdell and Vinson.

B.   RLUIPA Claim

Hurlburt further alleges that defendants' actions have burdened his religious practice under the RLUIPA which, in certain circumstances, prohibits government infringement on the practice of religion. See Mayweathers v. Newland, 314 F.3d 1062, 1065 (9th Cir. 2002).

"RLUIPA states that a prison regulation shall not impose a 'substantial burden' on the 'religious exercise' of a prisoner, unless the government demonstrates that the burden is in furtherance of a 'compelling governmental interest' and is the 'least restrictive means' of furthering that interest." Cardew v. New York State Dept. of Correctional Servs., No. 01-3669, slip. op. at *4, 2004 WL 943575 (S.D.N.Y. Apr. 30, 2004)(quoting 42 U.S.C. § 2000cc-1(a)). "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious beliefs." Id. § 2000cc-5(7)(a). RLUIPA applies to both substantial burdens imposed by programs or activities that receive federal financial assistance and to substantial burdens on religious exercise having an effect on interstate commerce. Id. § 2000cc-1(b). See also Ulmann v. Anderson, No. 02-405, slip op. at 7 (D.N.H. Apr. 26, 2004).

Once a plaintiff produces prima facie evidence to support a

free exercise violation, the plaintiff bears the burden of persuasion on whether the regulation substantially burdens his exercise of religion and the state bears the burden of persuasion on all other elements.  42 U.S.C. § 2000cc-2(b).

Here, Hurlburt alleges that by denying him a religious shaving pass, defendants' actions are unconstitutional under the RLUIPA.  Construed liberally, the complaint alleges that Hoyt, Blaisdell and Vinson, acting in their individual capacity, have substantially burdened his religious beliefs by denying him the use of a shaving pass and preventing him from observing the Nazarite Vow.  He further alleges that defendants have violated the provisions of the RLUIPA by requiring him to identify a particular religious belief as being central to a system of religious beliefs.  If true, and to the extent the NCF receives federal financial assistance, these allegations may well give rise to a viable claim under the RLUIPA against defendants in their individual capacity.  See Orafan v. Goord, No. 00-CV-2022 (LEK/RFT), 2003 WL 21972735 at *9 (N.D.N.Y. Aug. 11, 2003)(applying RLUIPA to claims against defendants in their in individual capacity).

## Conclusion

For the reasons stated above, I find that Hurlburt has alleged Section 1983 and RLUIPA claims against Hoyt, Blaisdell and Vinson premised upon the denial of free exercise of religion and the substantial burden on religious practices.  As I find that Hurlburt has stated a claim upon which relief may be granted, I order the complaint served on the defendants.

The Clerk's Office is directed to serve the New Hampshire Office of the Attorney General (AG), as provided by in the Agreement on Acceptance of Service, effective October 1, 2005, copies of complaint (document no. 1) and this order.  See LR 4.3(d)(2)(C).  Within thirty days from receipt of these materials, the AG will submit to the court an Acceptance of Service notice specifying those defendants who have authorized the AG's office to receive service on their behalf.  When the Acceptance of Service is filed, service will be deemed made on the last day of the thirty-day period.

As to those defendants who do not authorize the AG's office to receive service on their behalf or whom the AG declines to represent, the AG shall, within thirty days from receipt of the aforementioned materials, provide a separate list of the last known addresses of such defendants.  The Clerk's Office is

instructed to complete service on these individuals by sending to them, by certified mail, return receipt requested, copies of these same documents.

Defendants are instructed to answer or otherwise plead within thirty days of acceptance of service.  See Fed. R. Civ. P. 12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on defendants by delivering or mailing the materials to them or their attorneys, pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: October 5, 2005

cc:   William Hurlburt, *pro se*